UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Charles Eldering et al.,

    Plaintiffs

v.

Glenn Dillard and Rio Wild Properties,

    Defendants

Case No.: 2:19-cv-00772-JAD-NJK

**Order Setting Aside Default and Denying Motion for Default Judgment**

[ECF Nos. 10, 12]

Five plaintiffs brought this breach-of-contract and fraud lawsuit against Glenn Dillard and Rio Wild Properties for their alleged mismanagement of the plaintiffs' investments in Brazilian real estate.[1] The plaintiffs served the defendants by publication and, after months passed, they sought and received a default against the defendants in November 2019.[2] A year later, Dillard has appeared in this action and now moves to set aside the clerk's entry of default against him.[3] Because Dillard has shown good cause to set aside the default, I grant his motion, deny the plaintiffs' related default-judgment motion[4] against Dillard as moot, and against Rio Wild as premature, given the entanglement of the claims and parties in this case.

## Background[5]

Last year, plaintiffs Charles Eldering, Janice and Paul Maitino, and Mabel and Paul McInerney sued Dillard and Rio Wild for tricking them into investing several million dollars in

---

[1] ECF No. 1 (complaint).

[2] ECF Nos. 8 (motion for entry of default), 9 (entry of default).

[3] ECF No. 12 (motion to set aside default).

[4] ECF No. 10 (motion for default judgment).

[5] This is merely a summary of facts alleged in the complaint and should not be construed as findings of fact.

Brazilian real estate, which the defendants promised to manage and sell.[6]  But after trying and failing to serve Dillard at his parents' home and resorting to service by publication, the plaintiffs argue that they were left without so much as a word from the defendants, and they successfully received an entry of default at the end of last year.[7]  Six months passed before the plaintiffs moved for default judgment against the defendants and, days later, Dillard's attorney filed a notice of appearance on his behalf.[8]  Dillard now moves to set aside the default against him only, arguing that he was unaware of this lawsuit until months after the default was entered.[9]  The plaintiffs maintain that Dillard's disappearing act was intentional and that they would suffer prejudice if required to pursue this suit.[10]  Instead, they maintain that they are entitled to over eight million dollars from the defendants in compensatory and punitive damages—and by default judgment.[11]

## Discussion

**A.  Good cause exists to set aside the default against Dillard.**

Federal Rule of Civil Procedure 55 requires the clerk to enter a default against a party who is shown, "by affidavit or otherwise," to have failed to plead or otherwise respond to claims brought against him.  But the rule also allows the court to set aside an entry of default with a showing of good cause.[12]  The Ninth Circuit has identified three factors to determine whether

---

[6] ECF No. 10 at 3.

[7] *Id.* at 10–11.

[8] ECF No. 11 (notice of appearance).

[9] *See* ECF No. 12 at 3.

[10] ECF No. 14.

[11] *See* ECF No. 10 at 1 (requesting $2,097,294.14 in general damages and $6,291,882.42 in punitive damages).

[12] Fed. R. Civ. P. 55(c).

good cause exists: whether the defaulting party engaged in culpable conduct, which lead to the default; whether there is a meritorious defense; and whether the plaintiff would suffer prejudice if the default is set aside.[13]  Default is generally disfavored when a case can be decided on its merits and should be granted only under "extreme circumstances,"[14] with all doubts resolved in favor of setting aside default.[15]

       Dillard argues that he was unaware of this lawsuit until several months after the clerk entered default against him and that his failure to appear was not intentional.  He maintains that he didn't even know he was sued until he searched his name in March and had assumed, at that point, that it had been dismissed.[16]  It wasn't until a May internet search that he realized that the plaintiffs were seeking judgment against him, and he then immediately sought to set aside the default so he could defend this suit.[17]  The plaintiffs don't believe Dillard, and they argue that he knew of the suit in March and his father told him people were looking for him.  While Dillard acknowledges that he had been informed that someone was looking for him,[18] established Ninth Circuit law indicates that a defendant must have "actual or constructive notice" of the lawsuit and "intentionally fail[] to answer."[19]  Dillard's general knowledge that he was sought after for fraud does not establish that he knew of the lawsuit and intentionally avoided responding in bad

---

[13] *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

[14] *Id.*

[15] *Schwab v. Bullock's Inc.*, 508 F.3d 353, 355 (9th Cir. 1974).

[16] ECF No. 12-1 at ¶ 6–7 (Ex. A to motion to set aside).

[17] *Id.* at ¶ 8.

[18] *Id.* at ¶ 4.

[19] *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F. 3d 1085, 1092 (9th Cir. 2010) (citing *TCI Grp. Life. Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001)).

faith.[20]  So I cannot find that these facts establish that Dillard's culpable conduct alone led to the default.

There may also be a meritorious defense to the plaintiffs' claims.  Plaintiffs allege that Dillard requested money to purchase Brazilian properties and refused to "return[] the proceeds or any other benefit to the Plaintiffs" before absconding and refusing to communicate with them.[21]  But Dillard states that he deeded Brazilian properties to the plaintiffs to compensate them for the losses on their investments.[22]  He also contends that his Brazilian real-estate license shows that he did not misrepresent his capacity to sell properties in Brazil.[23]  I don't not need to resolve this defense at this stage; in setting aside a default, I need only consider whether the defaulting party has alleged "sufficient facts that, if true, would constitute a defense."[24]  Dillard has retained counsel and demonstrated his intent to defend against the plaintiffs' claims, and his defenses are not plainly without merit.  I am also unpersuaded that the plaintiffs would suffer prejudice merely because they now have to litigate this case after waiting a year.[25]  So I find that good cause exists to set aside the default against Dillard and deny the plaintiffs' motion for default judgment against him as moot.

---

[20] *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citing *TCI Group*, 244 F.3d at 697).  The plaintiffs submit a video of their final attempt at service at Dillard's parents' home, which confirms that, though they attempted to leave documents with Dillard's profanely threatening father, no documents were ever left.  And while they told him the papers were legal, they did not say that Dillard had been sued.

[21] ECF No. 14 at 9.

[22] ECF No. 12 at 7–8.

[23] ECF No. 18 at 5.

[24] *Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244 F.3d at 700).

[25] *See* ECF No. 14 at 10.

**B.    A default judgment against Rio Wild Properties is premature.**

I also deny the plaintiffs' motion for default judgment against Rio Wild as premature. The Ninth Circuit follows the time-honored *Frow* doctrine for considering whether to enter a default judgment against a single defaulting defendant in a multi-defendant case. The doctrine recognizes that, "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants."[26] The Ninth Circuit extends this doctrine to cases in which the co-defendants are "similarly situated" and defense of the claims will hinge on the same legal theory because "it would be incongruous and unfair to allow a plaintiff to prevail against defaulting defendants on a legal theory rejected by a court with regard to an answering defendant in the same action."[27]

Here, *Frow* unmistakably counsels against a default judgment against Rio Wild while the suit against Dillard persists. Plaintiffs seek relief from the defendants "jointly and severally" and argue that their claims against Rio Wild "should apply equally against Dillard" because Dillard is "the alter ego of Rio Wild." *Frow* cautions against entering a default judgment against Rio Wild while its co-defendant actively defends against the suit, which seeks to hold them equally liable for this South American business deal gone sour. So I deny the plaintiffs' motion for default judgment against Rio Wild without prejudice to their ability to reurge this request after the claims against Dillard have been resolved.

---

[26] *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow v. De La Vega*, 82 U.S. 552 (1872)).

[27] *Geramendi v. Henin*, 683 F.3d 1069, 1082–83 (9th Cir. 2012) (quotation omitted).

**Conclusion**

IT IS THEREFORE ORDERED that Dillard's motion to set aside default **[ECF No. 12] is GRANTED**. The Clerk of Court is instructed to **set aside default [ECF No. 9] as to defendant Glenn Dillard**. Dillard must answer or otherwise respond to the complaint by **November 2, 2020**.

IT IS FURTHER ORDERED that the plaintiffs' motion for default judgment **[ECF No. 10] is DENIED** as moot as to Dillard and denied as premature and without prejudice as to Rio Wild Properties.

_____
U.S. District Judge Jennifer A. Dorsey
October 21, 2020